IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES SINCLAIR, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  3:21-CV-00831 |
| JOHNSON CONTROLS-HITACHI AIR CONDITIONING NORTH AMERICA, LLC, | § | |
| | § | |
| | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

## COMPLAINT & JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff James Sinclair ("Mr. Sinclair") hereby files this Complaint & Jury Demand complaining of Age Discrimination in Employment Act (ADEA) violations against his former employer Defendant Johnson Controls-Hitachi Air Conditioning North America, LLC ("Johnson Controls"). Mr. Sinclair demands a trial by jury on his claims, and specifies his causes of action for the Court as follows:

### I.  PARTIES

1. Mr. James Sinclair is an individual residing in the State of Texas.

2. Defendant Johnson Controls-Hitachi Air Conditioning North America, LLC is a limited liability corporation operating nation-wide and in Dallas County with a headquarters and office in

Irving, TX. Defendant can be served with process by serving its registered agent, C T Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201-3136.

## II.  JURISDICTION AND VENUE

3. The Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §1331 & §1343.

4. Venue exists in this district and division under 28 U.S.C. §1391 as Mr. Sinclair was employed at Defendants' Irving, Texas office and the events at issue occurred in Irving, Texas.

## III.  FACTUAL ALLEGATIONS

4. Mr. Sinclair began working as a Product Applications Engineer-Technical at Defendant Johnson Control's Irving, Texas office on August 10, 2015.

5. Mr. Sinclair was a loyal and hard-working employee.

6. Mr. Sinclair had a positive working relationship with his direct manager Kerry McIntyre.

7. In April of 2018, a new Vice President, Nicholas Shin, started working at Johnson Controls.

8. By June of 2018, Shin started making discriminatory comments about Mr. Sinclair's age in front of other employees and clients.

9. Mr. Sinclair was 58 years old at the time Shin started making offensive comments abut Mr. Sinclair's age.

10. In December of 2018, Shin called Mr. Sinclair "the old goat" in front of a number of employees at the company holiday party.

11. On another occasion, Shin, in reference to Mr. Sinclair, commented "he's no spring

chicken, he's not even a fall chicken."

12. Whenever Shin introduced Mr. Sinclair to potential clients, Shin made comments about Mr. Sinclair's age.

13. Shin frequently told new clients and other employees that Sinclair "had been here forever. Longer than forever actually."

14. At the time Shin made these comments, Sinclair had only been with the company a few years.

15. In April of 2019, Shin called Sinclair into an unscheduled meeting without a manager or supervisor present and threatened Sinclair's job saying he (Shin) had no problem getting rid of people who don't play by the rules.

16. Sinclair had in fact been "playing by the rules" so it made no sense to Sinclair why Shin would be threatening his job other than Shin's apparent problem with Sinclair's age.

17. When Sinclair asked Shin what Shin was talking about, Shin did not offer any explanation and instead told Sinclair to shut his mouth and listen.

18. On or about April 9, 2019, Sinclair reported Shin's ageist comments and the threat Shin made at the meeting to Defendants' Human Resources Manager Jennifer Bagley.

19. Bagley told Sinclair to "work it out" with his then supervisor Jana Price and Shin.

20. Bagley did not, to Sinclair's knowledge, take any action to stop Shin's discriminatory treatment of Sinclair.

21. In September of 2019, Sinclair's direct manager McIntyre informed Sinclair that Shin wanted to eliminate Sinclair's position in order to get rid of Sinclair.

22. On or about November 1, 2019, McIntyre then confirmed to Sinclair that Shin had decided to eliminate Sinclair's position as part of a reduction-in-force.

23. On November 5, 2019, Sinclair contacted Defendants' Ethics Hotline and provided information and evidence that Shin had chosen to terminate Sinclair under the cover of the reduction in force due to Sinclair's age.

24. In this November 5, 2019 ethics complaint, Sinclair informed Defendants about Shin's ageist comments and attached a copy of the April 9, 2019 report Sinclair had made to Human Resources about Shin.

25. In this November 5, 2019 ethics complaint, Sinclair informed Defendants that his direct manger McIntyre actually wanted to retain Sinclair and didn't want Sinclair's job cut.

26. McIntyre in fact told Sinclair that he, McIntyre, had other positions in mind for elimination if a reduction in force was needed and didn't want Sinclair's job cut.

27. Sinclair reported in his ethics complaint that Shin's decision to eliminate his position made no sense considering there were two new hires and two part-time employees in his department, a projected growth of 30% for the next year, and a plan to bring on twenty more representatives in the next year.

28. The very next day on November 6, 2019 Defendants terminated Sinclair's employment.

29. As required by the Older Workers Benefit Protection Act, Defendants provided Sinclair a list of job titles impacted and not impacted by the alleged reduction of force and the ages of those selected and not selected for the reduction in force.

30. Out of the four employees in Sinclair's office who performed the same type of

technical support duties, Sinclair was listed as both the oldest of those employees at 59.9 years of age and the only one selected for the reduction in force.

30. Another Product Applications Engineer-Technical who was 12.3 years younger than Sinclair was not chosen for the reduction-in-force.

31. Defendant eventually assigned a Human Resources representative to investigate Sinclair's November 5, 2019 ethics complaint on November 20, 2019.

32. Defendant, however, never offered to reinstate Sinclair's employment as a remedy for the age discrimination and retaliation Sinclair had experienced.

## IV.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

33. On January 31, 2020, with no resolution forthcoming from Defendant, Sinclair filed a Charge of Discrimination against Defendant with the Texas Workforce Commission Civil Rights Division alleging age discrimination and retaliation against Shin and Defendant.

34. As a result of the Texas Workforce Commission Civil Rights Division's work-sharing agreement with the EEOC, Sinclair's Charge of Discrimination was also dually filed with the EEOC and assigned EEOC Charge No. 31C-2020-00367.

35. On February 3, 2021, the EEOC issued a right-to-sue on the above-referenced charge of discrimination.

36. Sinclair has therefore exhausted his administrative remedies under the Age Discrimination in Employment Act (ADEA).

37. Sinclair has also timely filed his ADEA causes of action in this Court within 90 days of the date his EEOC Right-to-Sue Notice issued to him.

## V.  FIRST COUNT: AGE DISCRIMINATION

### *(IN VIOLATION OF THE ADEA)*

38. Mr. Sinclair incorporates the allegations contained in the preceding paragraphs and incorporates by reference.

39. Mr. Sinclair was, at all relevant times, an employee within the meaning of the Age Discrimination in Employment Act ("ADEA").

40. Defendant, at all relevant times, was an employer within the meaning of ADEA.

41. In 2019, the year Defendant wrongfully terminated Sinclair, Defendant had over 100,000 employees.

42. The ADEA prohibited Defendant from discriminating against Mr. Sinclair based on his age.

43. Defendant discriminated against Mr. Sinclair based on his age (59 year and 11 months).

44. Shin, the Vice President who made the decision to fire Mr. Sinclair under the cover of a reduction in force, had made repeated ageist comments about Mr. Sinclair ever since becoming Defendant's Vice President.

45. Shin treated younger employees who performed the same job duties as Mr. Sinclair in the same office as Mr. Sinclair under the same manager as Mr. Sinclair better than Mr. Sinclair, choosing to allow those employees, but not Mr. Sinclair, to remain employed with Defendant.

46. Shin and Defendant would not have fired Mr. Sinclair but for Mr. Sinclair's age (59 years and 11 months).

47. Defendant's violation of Mr. Sinclair's ADEA rights was not a mistake, but rather intentional and willful, justifying an award of liquidated damages against Defendant.

48. As a result of Defendant's unlawful employment practices, Mr. Sinclair has suffered actual damages including the loss of back and front pay, the loss of health insurance and other fringe benefits, and incidental damages incurred in looking for and securing a new job.

49. Mr. Sinclair has also incurred, and will continue to incur, costs in seeking to protect and enforce his rights, including court costs and attorney's fees.

## VI.  SECOND COUNT: RETALIATION
### *(IN VIOLATION OF THE ADEA)*

50. Mr. Sinclair incorporates the allegations contained in the preceding paragraphs and incorporates by reference.

51. Mr. Sinclair engaged in protected activity when he made internal reports of age discrimination on April 9, 2019 and November 5, 2019.

52. Shin, the Vice President who made the decision to fire Mr. Sinclair under the cover of a reduction in force, was the subject of Sinclair's complaints of age discrimination.

53. After working for Defendant for over four years without ever receiving a negative performance evaluation, Mr. Sinclair was fired only after he made his age discrimination complaints.

54. Shin and Defendant would not have fired Mr. Sinclair but for Mr. Sinclair's age and age discrimination complaints.

55. Defendant's violation of Mr. Sinclair's ADEA rights was not a mistake, but rather intentional and willful, justifying an award of liquidated damages against Defendant.

56. As a result of Defendant's unlawful employment practices, Mr. Sinclair has suffered actual damages including the loss of back and front pay, the loss of health insurance and other fringe benefits, and incidental damages incurred in looking for and securing a new job.

## VIII. JURY DEMAND

57. Mr. James Sinclair demands a trial by jury on all of his causes of action.

## IX. PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Mr. Sinclair prays that Defendant be cited to appear and answer herein, and that on final trial, Mr. Sinclair recover the following relief against Defendant:

a. Judgment for Mr. Sinclair in the amount of his actual economic losses including back pay, front pay, all past and future lost fringe benefits, damage to Mr. Sinclair's retirement savings and future earnings capacity, and costs incurred by Mr. Sinclair to search for new employment;

b. Liquidated damages as allowed by the ADEA;

c. Pre-judgment and/or post-judgment interest as allowed under the law at the maximum legal rate;

d. Attorneys' fees;

e. Expert's fees;

f. All costs of court;

g. Equitable relief available under the ADEA including reinstatement; and

h. Such other and further relief to which Mr. Sinclair may be justly entitled.

Date:  April 12, 2021    Respectfully submitted by:

/s/ *Christine A. Hopkins*
**Christine A. Hopkins**
Texas State Bar No. 24095768

**TREMAIN ARTAZA, PLLC**
13140 Coit Road, Ste. 104
Dallas, Texas 75240
Telephone: 469-573-0297
Facsimile: 214-254-4941
Christine@tremainartaza.com

**ATTORNEY FOR PLAINTIFF**